CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY
v. WILLIAM S. WILLIAMS ET AL.

FILED APRIL 10, 1901. No. 9,392.

1. **Common Carrier: RAILROAD COMPANY: LIVE STOCK: SUITABLE CARS: DUE CARE.** A railroad company acts in the capacity of a common carrier of live stock which it receives for transportation; and as such carrier it is bound to provide cars fit and suitable under existing conditions, and exercise due care to carry safely.

2. **Where Shipper Does Not Agree to Furnish Caretaker, Company Liable for Loss Through Negligence.** Where the shipper of live

stock does not agree to furnish caretaker, and some of the animals die or are injured for want of proper care and protection while in transit, the carrier is liable and must bear the loss.

3. **Where Shipper Agrees to Furnish Caretaker but Fails.** Where a shipper of live stock agrees to furnish a caretaker and fails to do so, the carrier, if it has knowledge of such failure and proceeds under the shipping contract, is liable for any loss resulting from its failure to provide the stock with proper care and protection.

4. **Denial Without Plea of Justification:** EVIDENCE. Where the defendant denies the commission of a wrongful act with which he is charged and pleads nothing by way of justification, evidence of justification responds to no issue and is immaterial.

5. **Evidence:** VERDICT. Evidence examined, and found to support the verdict.

ERROR from the district court for Seward county. Tried below before BATES, J. *Affirmed.*

*J. W. Deweese, Richard S. Norval* and *Frank E. Bishop,* for plaintiff in error.

*D. C. McKillip, contra.*

SULLIVAN, J.

This action was brought by William S. Williams and others against the Chicago, Burlington & Quincy Railroad Company to recover the value of a saddle-bred stallion which it is claimed became sick and died in consequence of long exposure and want of care while being transported over defendant's line of road from Kansas City, Missouri, to Seward, in this state. The jury found a verdict against the company, and judgment was rendered thereon. It appears from the record that the horse was shipped from Gainesville, Texas; that he was safely transported by the initial carrier, the Gulf, Colorado & Santa Fe Railway Company, to Kansas City and there tendered to the defendant, a connecting carrier, on or about May 2, 1892; that the defendant company at first declined to receive the animal because there was no one in charge of him either as a caretaker or with authority

43

to contract for his transportation; that there were afterwards some negotiations with Williams at Seward which eventuated in the defendant receding from its position and receiving the horse for shipment; that the animal was thereupon put into an ordinary stock car, hitched in such wise that he could not lie down, and sent upon his journey; that he received neither feed nor water from the time he was loaded at Kansas City until he reached Seward. How long that was does not clearly appear, but the inference is justifiable that it was between twenty-four and forty-eight hours. At this time the weather was chilly; rain was falling and the floor of the car was covered with slush. When he arrived at his destination the horse was in the first stages of pneumonia, from which disease he afterwards died. These and other facts submitted to the jury tended strongly to convict the defendant of negligence in the transportation of plaintiffs' property. The evidence, in our judgment, was quite sufficient to authorize and support the verdict rendered. The company undertook for a consideration to transport the stallion from Kansas City to Seward; it was a common carrier of freight and as such was bound to provide a car fit and suitable under existing conditions, and to exercise due care to carry the animal safely. *Black v. Chicago, B. & Q. R. Co.*, 30 Nebr., 197; *Moulton v. St. Paul, M. & M. R. Co.*, 31 Minn., 85; *St. Louis & S. E. R. Co. v. Dorman*, 72 Ill., 504; *Evans v. Fitchburg R. Co.*, 111 Mass., 142; Hutchinson, Carriers, sec. 218 *et seq.* There are, of course, exceptions to the general rule of liability for damages to property injured while being transported by a common carrier, but this case is obviously within the rule and unaffected by the exceptions. If the horse died for want of care and protection while being transported from Kansas City to Seward, the defendant is liable and must bear the loss, unless the plaintiffs' wrongful act or omission proximately contributed thereto. Counsel for the company insisted at the trial and contend here that the plaintiffs were in fault, and

that the damage which they have sustained was the direct result of their own negligence. It is said that they agreed to furnish an attendant for the stallion, and that he would have reached his destination in sound health if an attendant had been furnished. One answer to this argument is that no such agreement was ever made; another is that the breach of such a contract would not, under the circumstances here disclosed, exempt the defendant from liability. It was well understood by the parties to this action that the horse was to be transported over the defendant's road without an attendant. The company knew that the plaintiffs did not intend or expect to furnish a caretaker; it knew that they did not consider themselves under any obligation to do so; it knew that no caretaker would be furnished and that the animal would be in its exclusive charge while in transit. It was proven, and proven conclusively, that the minds of the parties met upon the distinct proposition that the company would receive and transport the plaintiffs' stallion from Kansas City to Seward without an attendant. But if the fact were otherwise; if there had been an agreement for a caretaker and a breach of it by the plaintiffs, that would not exonerate the company; it would not warrant it in proceeding under the contract in a negligent manner. In such case the antecedent fault of one party would not excuse the subsequent negligence of the other. 2 Jaggard, Torts, 977; 17 Am. & Eng. Ency. Law [2d ed.], 1071.

The contention of counsel for the defendant upon this branch of the case is not supported by *Terre Haute & L. R. Co. v. Sherwood*, 132 Ind., 129, or by any other decision so far as we know. The rule is not doubted that where the owner is in charge of live stock in transit the burden is on him to show a loss caused by the carrier's negligence. This is the point decided in the Indiana case. Other cases to which we have been referred deny a recovery where the shipper of animals, having agreed to furnish a caretaker, failed to do so and loss resulted from

the negligence of the carrier and the breach of the shipper's contract. Those cases are not precedents here, even on defendant's theory, because in each of them it appears that the carrier did not know that the shipper had failed to keep his agreement.

Some of the instructions are excepted to, but we think the only criticism to which they are fairly subject is that they are too favorable to the defendant. The refusal of the company to receive the stallion when he was first offered for shipment was denied by the answer; no justification was pleaded and the evidence in relation thereto did not respond to any issue and was altogether immaterial. The real questions in dispute at the trial were whether the defendant was guilty of negligence in transporting the horse, and whether the plaintiffs were guilty of contributory negligence in failing to furnish an attendant. These questions having been, under proper instructions, resolved against the company, the judgment should be, and is,

AFFIRMED.