Argued 16 July; decided 11 August, 1902.

## NORMILE v. OREGON NAVIGATION CO.

[69 Pac. 928.]

TRIAL—VARIANCE.

1. There is a fatal variance between a claim against a common carrier on its common-law liability and proof of a contract of carriage limiting the liability for loss.

TRIAL—ALLEGATIONS AND PROOFS.

2. Proofs must follow and support the allegations of the pleadings—a plaintiff will not be permitted to sue defendant for a violation of its duty as a common carrier, and recover for some neglect of its duty as a warehouseman, for example.

CARRIERS—MULES—RED PLOWS—QUESTION FOR JURY.

3. It is the duty of a common carrier usually to unload goods at their destination with due care, and put them in a reasonably safe place, and whether this has been done in a given case is a question of fact: for example, whether a carrier has discharged its duty to the shipper when it has unloaded a mule onto a wharf, and tied it to a small, light plow, painted a vermillion red, is a question that should be submitted to the jury.

CARRIERS—ASSUMING LABOR OF UNLOADING—NEGLIGENCE.

4. Notwithstanding a stipulation that the shipper shall unload his property at destination, if the carrier voluntarily does so without notice to the shipper it is liable for negligence therein.

41 OR.—12.

EXEMPTION OF CARRIER FROM LIABILITY FOR NEGLIGENCE.

5. A common carrier cannot at all limit its liability for loss of or injury to property entrusted to it for carriage caused by its own negligence or that of its servants or agents.

CARRIERS—VALIDITY OF CONTRACT AS TO VALUE OF LIVE STOCK.

6. A contract of shipment of live stock, providing that the stipulated tariff is less than that for transportation at carrier's risk, and is given in part consideration of shipper's agreement to limitation of carrier's liability, and it is agreed the value of the stock does not exceed $100 per head, does not make a partial exemption from liability for negligence, but a valid valuation; it not being shown that it was not entered into freely by the shipper, or whether he could have obtained other terms on a higher valuation.

From Clatsop: THOMAS A. McBRIDE, Judge.

This is an action by S. Normile against the Oregon Railroad & Navigation Co., to recover the value of a mule, which, with other stock, the defendant, it is alleged, undertook and agreed, for the consideration of $15, to transport from Portland to Astoria, skillfully and safely, and there deliver to plaintiff in good condition. It is further alleged that the defendant is a common carrier, and engaged in that business, and that it placed the stock, consisting of eight head of horses and two head of mules, on board its steamer Hassalo, to transport the same to Astoria, but did not transport it safely or in good condition, and did not use due or ordinary care in the handling and delivery thereof, but upon the arrival of said steamboat at the port of Astoria, and while the animals were still in its possession, defendant wrongfully, carelessly, and negligently tied one of the mules to a small, light plow, painted red, by reason whereof said animal, although gentle and tractable, by moving its head also moved the plow, which was wholly detached, and, becoming frightened, ran away and was injured.

Two defenses were interposed. By the first it is alleged that the parties entered into a written contract concerning the shipment and transportation of the stock; that the defendant received, and, with due care and diligence, safely transported and delivered, the same, and the whole thereof, to plaintiff at Astoria, in like condition as when received, in accordance with the terms of said shipment and the conditions of said contract;

that immediately upon the arrival of said stock at the port of Astoria, the plaintiff took into his possession, receipted to the defendant therefor, and paid the defendant the agreed compensation of $15 for its carriage and delivery. The second defense is partial only, wherein it is alleged that, by the terms of the written contract, it was agreed and provided that the value of the stock did not exceed $100 for each head, and that the recovery, if any be had, should not exceed that sum.

The reply alleges that the defendant is a common carrier, as set up in the answer, and is required and enjoined by law to carry all freight and live stock that may be delivered to it safely and securely, and deliver the same, in as good condition as when received, to its owner at the termination of the shipment; that the alleged and pretended contract set forth by defendant is fraudulent and void, for the reason that at the date of its execution the regular price charged by said company for transporting horses and mules from Portland to Astoria was $1.50 per head, which price was charged to the plaintiff, but that by the terms of the said alleged agreement it is attempted to limit the value of said stock and defendant's liability therefor, contrary to law and public policy; and for the further reason that P. Schrader signed the said agreement without having an opportunity to read it, and was compelled thereto before defendant would receive and transport said stock. It is further alleged that defendant refused to permit the plaintiff to load, or assist in loading or unloading, said animals on or off the boat, but that defendant, without authority from plaintiff, wrongfully and unlawfully, and in violation of the terms of said contract, of its own volition, loaded the horses and mules on said boat, and unloaded them off the same, and tied them on the wharf and in the warehouse of the defendant at Astoria, and while in the possession of defendant, and in the unloading, the injury to said mule occurred, all without any fault of plaintiff, but by reason of the carelessness and negligence of the defendant.

There was evidence tending to show that Schrader, who was acting for plaintiff, delivered the animals to the defendant at

Portland for shipment to Astoria; that the deck hands put them aboard the boat; that when he arrived at Astoria he went ashore, after the boat had been there a little while; that the horses were then unloaded, and tied on the dock; that he did not know when they were taken off the boat, as he was asleep at the time, and was not notified; that no one else had charge of the stock but him; that he started to take the horses, but was notified that the freight would have to be paid before he could proceed; that he went at once to plaintiff's house near by, who was then not out of bed; that in the course of a half an hour plaintiff appeared, paid the freight, and receipted for the stock, and that as soon as this was done Schrader attempted to take four of the horses away, whereupon the mule, seeing the horses start, made an effort to follow them, and in doing so shifted the plow, which frightened it, and the injury ensued; and that Schrader paid his own fare to Astoria. The bill of lading signed by Schrader was offered on the part of the defense, and admitted in evidence. Upon the cause being submitted, plaintiff obtained a judgment for $150, and the defendant appeals.    REVERSED.

For appellant there was a brief over the names of *Cotton, Teal & Minor,* and *William C. Bristol,* with an oral argument by *Mr. Bristol.*

For respondent there was a brief over the name of *Fulton Bros.,* with an oral argument by *Mr. Charles W. Fulton.*

MR. JUSTICE WOLVERTON delivered the opinion.

1. At the threshold of the controversy, counsel for defendant insists that, as plaintiff did not declare upon the special contract entered into by the parties respecting the shipment, as evidenced by the bill of lading, he should have been denied relief because of a variance in the proof. The plaintiff has a legal right to pursue the form of action adopted (3 Ency. Pl. & Pr. 818), but, having thus made his election, he must recover upon the common-law liability, or not at all, and a valid

special contract of the parties, providing or stipulating for a different or restricted liability in the particular or particulars relied upon for recovery, will not, in reason and good practice, support the action.   It is seldom that bills of lading showing the contractual and correlative relations and obligations of the carrier and shipper relative to the shipment are drafted with a view to changing or restricting all the common-law liabilities to which the carrier is subjected; and if any remain upon which an action may be founded and recovery had without coming in conflict with special limitations and restrictions, there exists no reason why the common-law action may not be maintained, notwithstanding the special contract.   To illustrate : If there be a special restriction on account of loss occasioned by fire or by robbery, that, of itself, could not prevent a recovery upon the common-law liability in a failure to carry safely in other respects.   Ordinarily, the common carrier is considered and treated as an insurer of the goods it undertakes to carry, and all limitations of common-law liabilities are in the nature of exceptions to its general undertaking; and hence, in order to avoid such liabilities, the exceptions must be pleaded.   Thus, it has been held in *Missouri Pac. Ry. Co.* v. *Nicholson,* 2 Willson, Civ. Cas. Ct. App. § 168, that "in an action against a common carrier, founded on the common-law liability of such carrier, it is not necessary to produce in evidence a bill of lading of the property alleged to have been lost or injured.   If there was a special contract, restricting the common-law liability of the carrier, it devolved upon the carrier to allege and prove it."   To the same purpose is *Coupland* v. *Housatonic R. Co.* 61 Conn. 531 (23 Atl. 870, 15 L. R. A. 534), a case of much analogy to the present..  See, also, *Tuggle,* v. *St. Louis, K. C. & N. Ry. Co.* 62 Mo. 425, and the reasoning of Mr. Justice GRAVES in *Lake Shore & M. S. R. Co.* v. *Perkins,* 25 Mich. 329 (12 Am. Rep. 275).   And this is just what the defendant has done in the case at bar.   It has set up that, by a special agreement, the plaintiff limited himself in his recovery to $100.   The plaintiff replied that the alleged agreement was void, as being contrary to sound public

policy.   If void, the defendant's common-law liability remains
unchanged and unrestricted in that particular, and the special
contract cannot stand in the way of plaintiff's recovery by the
common-law form of action.   If, however, the special agree-
ment is found legal and binding, there is a variance fatal to
that form of action, and the plaintiff must be remitted to the
special contract and an action thereon: *Indianapolis & Cin.*
*R. Co.* v. *Remmey,* 13 Ind. 518; *Indianapolis & Cin. R. Co.* v.
*Bennett,* 89 Ind. 457; *Hall* v. *Pennsylvania Co.* 90 Ind. 459;
*Snow* v. *Indiana, B. & W. Ry. Co.* 109 Ind. 422 (9 N. W.
702) ; *White* v. *Great Western Ry. Co.* 2 C. B. (N. S.) 7.

2. It is suggested by counsel for plaintiff that, after having
alleged negligence on the part of the defendant in securing
the mule in the manner described, it could make no difference
whether it was acting in the capacity of a common carrier or
a warehouseman; it would be liable in either capacity.   But
the action is essentially grounded upon the failure of the com-
pany, through its negligence, to transport and deliver safely,
and not upon any negligence in properly storing the property
to await its reception by the shipper.   The complaint proceeds
upon that idea, and the reply is in reaffirmation of it.   So that
recovery must be had, if at all, against the defendant in its
capacity as a common carrier, and not a warehouseman.

3. This brings us to the contention of the defendant that it
was relieved of liability under the complaint when the transfer
of the stock was made from the boat to the wharf.   There is an
irreconcilable conflict in the authorities as to when the duties
of a common carrier cease and those of a warehouseman begin,
where freight is carried to its destination, and unloaded, and
put in a place usual and convenient for its reception by the
shipper.   Many of the authorities hold that the shipper must
have a reasonable time after the arrival and deposit thereof
in which to receive and take it away; some requiring notice to
the shipper also, while others relieve the carrier at once upon
the safe deposit and storage at the usual place, the same being
convenient for its reception by the shipper.   It is not essential
that we should declare at this time which of the rules is the

better, or which should be adopted, as under either it is neces-
sary that the goods should be unloaded with care, if they are
to be taken from the car or boat to a place of deposit, and put
in a place reasonably safe and free from liability to injury.
The carrier does not, in any event, discharge itself of duty as a
carrier by merely taking goods to the terminus of its route,
but, as is said by Mr. Chief Justice BIGELOW in *Rice* v. *Boston
& W. R. Corp.* 98 Mass. 212, "it is bound also to unload them
with due care, and put them in a place where they will be rea-
sonably safe and free from injury.  Until this is done, the duty
and responsibility which attach to a corporation as carriers do
not close."  See, also, *Thomas* v. *Boston & Prov. R. Corp.* 10
Metc. (Mass.) 472 (43 Am. Dec. 444) ; *Norway Plains Co.* v.
*Boston & M. R. Co.* 1 Gray, 262 (61 Am. Dec. 423) ; *Gregg* v.
*Illinois Cent. R. Co.* 147 Ill. 550 (35 N. E. 343, 37 Am. St. Rep.
238).  The carrier is required to safely carry and deliver, and,
without determining which is the better rule, there is evidence
sufficient to go to the jury in the case at bar whether in any
event the carrier safely deposited and secured the stock upon
its wharf or in its warehouse, whatever the place of deposit
may be termed; that is to say, whether they were taken from
the boat, and put in a place reasonably secure and free from
all liability to injury, which includes, of course, the securing
of the animals in a reasonable manner with reference to their
safety.  The company could not be said to have discharged its
duty as a carrier if at the place of destination it had left the
horses and mules loose, to go where they pleased, and thus per-
mitted them to run astray or be injured, nor did it discharge
its duty in that capacity until it had reasonably secured the
stock after unloading it from the boat; and it was a proper
question for the jury to determine whether defendant exer-
cised reasonable care in securing the mule in controversy to a
light plow, painted red, for in doing this act it was discharging
a duty incumbent upon it as a common carrier.  The instruc-
tions given were in harmony with this view, and hence were
not subject to exceptions.

4. In this connection another question may be noticed. By the terms of the bill of lading, it is agreed that the shipper should load and unload the stock, and it is contended by the defendant that it was the duty of the plaintiff to unload this stock from the boat, and the defendant was thereby relieved of all responsibility in respect thereof. The plaintiff answers this contention by saying that the defendant, regardless of the terms of the contract, unloaded the stock of its own accord, without giving plaintiff an opportunity to attend to the matter. There was evidence adduced tending to show that the employes of the defendant unloaded the stock in the morning before Schrader, who accompanied it, was up, and without calling him, or notifying him that it was ready to be taken from the boat. The court instructed the jury, if, notwithstanding the stipulation in the bill of lading by which the shipper was to unload the stock, the defendant undertook to discharge that duty itself, without notice to the shipper or his agent, it was liable if negligent in the performance of the act. This was a correct exposition of the law, and the instruction was proper: *Missouri Pac. R. Co. v. Kingsbury* (Tex. Civ. App), 25 S. W. 322; *Chicago, B. & Q. R. Co.* v. *Williams,* 61 Neb. 608 (85 N. W. 832, 55 L. R. A. 289).

5. It is a sound and wholesome doctrine, based upon considerations of public policy and fair dealing, that a common carrier will not be permitted to stipulate against liability for loss or injury of property intrusted to it for carriage and transportation occasioned by its own negligence or that of its agents and servants. In some jurisdictions such a stipulation or agreement is upheld as valid, but the very great weight of American authority is in support of the doctrine as stated: 5 Am. & Eng. Ency. Law (2 ed.), 308. The text of this valuable edition is so strongly and abundantly supported by apt citations that it is unnecessary for us to make further references to the authorities. Nor can the carrier be permitted to stipulate or contract for a partial or limited exemption from liability occasioned by its negligence with any more reason than it may for a total exemption. We adopt the reasoning of

Mr. Justice CALDWELL in *Louisville & N. R. Co.* v. *Wynn,* 88 Tenn. 320, 327 (14 S. W. 311). It is palpable and cogent, and leads with irresistible power to but one result. "To our minds it is perfectly clear that the two kinds of stipulations—that prividing for total, and that providing for partial, exemption from liability for the consequences of the carrier's negligence —stand upon the same ground, and must be tested by the same principles. If one can be enforced, the other can; if either be invalid, both must be held to be so; the same considerations of public policy operating in each case. With great deference for those who may differ with us, we think it entirely illogical and unreasonable to say that the carrier may not absolve itself from liability for the whole value of the property lost or destroyed through its negligence, but that it may absolve itself from responsibility for one half, three fourths, seven eighths, nine tenths, or ninety-nine hundredths of the loss so occasioned. With great unanimity the authorities say it cannot do the former. If allowed to do the latter it may hereby substantially evade and nullify the law, which says it shall not do the former, and in that way do indirectly what it is forbidden to do directly. We hold that it can do neither." Like reasoning is employed by Mr. Justice DICKENSON in *Moulton* v. *St. Paul, M. & M. Ry.* Co. 31 Minn. 85, 88 (16 N. W. 497, 47 Am. Rep. 781), and the authorities are ample by which, to our minds, the doctrine is satisfactorily settled and established: *Railroad Co.* v. *Lockwood,* 84 U. S. (17 Wall.) 357; *Kansas City, St. J. & C. B. R. Co.* v. *Simpson,* 30 Kan. 645 (2 Pac. 821, 46 Am. Rep. 104); *Black* v. *Goodrich Transp. Co.* 55 Wis. 319 (13 N. W. 244, 42 Am. Rep. 713); *Abrams* v. *Milwaukee, L. S. & W. R. Co.* 87 Wis. 485 (58 N. W. 780, 41 Am. St. Rep. 55); *Alair* v. *Northern Pac. R. Co.* 53 Minn. 160 (54 N. W. 1072, 19 L. R. A. 764, 39 Am. St. Rep. 588). No sort of consideration, whether it be based upon a different or lower tariff, or whatever it might be, will therefore exempt the carrier, in whole or in part, from liability attributable to his own negligence; and, where such is the essential purpose of the contract, it cannot be upheld.

It must be conceded that authorities are to be found to the contrary, but many that are cited to that purpose do not so hold, and confusion has arisen through their misinterpretation, which has, no doubt, in some instances, at least, influenced such contrary holding. It is true that a common carrier's common-law liability may be limited and restricted in almost, if not in every, other particular. In this there is almost· entire harmony among the authorities, and the confusion alluded to is the outgrowth of general expressions touching the limitations of liability as to the carrier, when it was not intended to convey the idea of an exemption from a liability, in whole or in part, for the loss sustained. Thus, in *Hill* v. *Boston, H. T. & W. R. Co.* 144 Mass. 284 (10 N. E. 836), the court uses the expression, "taking the whole agreement together, the liability of the defendant is limited by the valuation expressed in the shipping agreement;" but this case is in no sense an authority for a partial exemption. "It was substantially covered," as the court say, by *Graves* v. *Lake Shore & M. R. Co.* 137 Mass. 33 (50 Am. Rep. 282). As to the latter case, there can be no misunderstanding, as Mr. Chief Justice MORTON, in announcing the opinion, directly observed that "if we adopt the general rule that a carrier cannot thus exempt himself from responsibility, we are of the opinion that it does not cover the case before us, which must be governed by other considerations. The defendant has not attempted to exempt itself from liability from the negligence of its servants. It has made no contract for the purpose." So, in the case of *Hart* v. *Pennsylvania R. Co.* 112 U. S. 331 (5 Sup. Ct. 151), sometimes cited as sanctioning a partial exemption, the court say: "The limitations as to value has no tendency to exempt from liability for negligence." In further illustration, see *Harvey* v. *Terre Haute & I. R. Co.* 74 Mo. 538. So that there is not so much inharmony among judicial utterances upon the subject as might be suggested by a cursory reading or consideration thereof. See Hutchinson, Carr. (2 ed.) 250.

6. The agreement so far as it is material here, is as follows: "That the said company has this day received from the ship-

per (P. Schrader) 8 head of horses, 2 head of mules, to be transported * * at the rate of * * trf. * * per head, which is less than the tariff rate for the transportation of live stock at carrier's risk, and is given said shipper in part consideration of his agreement to the limitation of the liability said company as common carrier, as herein set forth, upon the terms and conditions following, which are accepted and agreed to by the shipper as just and reasonable. * * And it is hereby further agreed that the value of the live stock to be transported under this contract does not exceed the following mentioned sum, to wit: Each horse, one hundred dollars; each mule, one hundred dollars; * * such valuation being that whereon the rate of compensation to this company for its services and risk connected with said property is based." We are concerned with its proper construction, as a correct solution of the controversy depends upon it. It will be noted that the contract was entered into by Schrader as shipper, and not by the plaintiff in person. But, however this may be, Schrader was the acknowledged agent of the plaintiff, and was, therefore, duly authorized to enter into such contract on his part: *Squire* v. *New York Cent. R. Co.* 98 Mass. 239 (93 Am. Dec. 162); *Hill* v. *Boston, H. T. & W. R. Co.* 144 Mass. 284 (10 N. E. 836).

If the purpose of the contract was merely to place a limit on the amount for which the defendant shall be liable,—that is to say, exempt it in any measure from full liability, as respects the value of the property concerned,—then clearly, as to any losses resulting from negligence, it cannot be helped; and this upon the ground that it would not be just and reasonable. *Quasi* public functionaries are especially held to fair dealing, and when acting as public carriers, with the advantages between them and the shipper standing very much to their side, they cannot be allowed to enter into any contract relative to the business in which they are engaged unless it is just and reasonable; and a contract exempting from liability based upon negligence cannot be so characterized. If, however, upon the other hand, the stipulation as to the

value is fairly and honestly made as a basis of the carrier's charges and responsibility, it will be sanctioned as a proper and lawful contract. It is confidently asserted by high authority that there can be no difference in a case like the present one, where the stipulation is that the value does not exceed a specified sum, and one where the value is stipulated to be a given sum; and further, that it can make no difference whether the valuation expressed in the contract is one previously named by the shipper on requirement of the carrier, or one inserted in the contract by the carrier without being named by the shipper, but acquiesced in by him. In either case it becomes a part of the contract, on which the minds of the parties meet, and on which they act. Presumably, charges for transportation are measurably based upon the value of the property, and, furthermore, the measure of care on the part of the carrier will very naturally be bestowed in proportion to the value of the goods in transit. All recognize the impracticability of fixing one rate applicable to stock of different value, and it seems reasonable that for stock of ordinary worth an ordinary or average value may be fixed, and a rate for shipment arrived at accordingly, and an agreement fairly entered into upon this idea between carrier and shipper would appear to meet all the requirements of the law. So, in the case at bar, if the plaintiff freely, and without restraint,—that is, was laboring under no such inequality of conditions as that he was compelled to enter into the contract whether he would or not, in order to have his stock carried—executed the contract in question, he is bound by the stipulations as to value. It is, in effect, a representation that the horses and mules were not worth to exceed $100 per head, and an express assent to the rate fixed as a proper charge for transportation based upon such valuation. The plaintiff cannot consistently claim a higher valuation upon the agreed rate of freight, and the contract is not, in any proper sense, one for the exemption of defendant from the consequences of negligence. In such a case the shipper is estopped to deny the value which he himself has deliberately fixed and agreed to as the real value of the prop-

erty when it comes to a loss. Such stipulations and contracts are supported and upheld upon considerations of fairness, as it relates both to the shipper and the carrier. We are led to this conclusion by cases of palpable analogy and high authority. Indeed, there are but few opposed: *Hart* v. *Pennsylvania R. Co.* 112 U. S. 331 (5 Sup. Ct. 151); *Alair* v. *Northern Pac. R. Co.* 53 Minn. 160 (54 N. W. 1072, 19 L. R. A. 764, 39 Am. St. Rep. 588); *Railway Co.* v. *Sowell,* 90 Tenn. 17 (15 S. W. 837); *Starnes* v. *Railroad Co.* 91 Tenn. 516 (19 S. W. 675); *Richmond & D. R. Co.* v. *Payne,* 86 Va. 481 (10 S. E. 749, 6 L. R. A. 849); *Gregg* v. *Illinois Cent. R. Co.* (147 Ill. 550, 37 Am. St. Rep. 238, 35 N. E. 343); *Hill* v. *Boston, H. T. & W. R. Co.* 144 Mass. 284 (10 N. E. 836). See, also, *Abrams* v. *Milwaukee, L. S. & W. R. Co.* 87 Wis. 485 (41 Am. St. Rep. 55, 58 N. W. 780).

The testimony shows that the plaintiff had been shipping on the steamboat line between Portland and Astoria for six years; that shortly prior to the shipment in question he endeavored, without success, to get a lower freight rate from the company; but nothing appears to have been said touching the valuation of the stock to be transported. Schrader says he did not know anything about the price of shipment or the rate at the time he took the stock to the Portland dock; that he desired it shipped at whatever the rate was; that after he took it to the dock, he saw a young man with reference to the shipment, who produced the shipping receipt, saying, "You will have to sign this," and he signed it. There was no testimony of a different tendency, and this, in brief, shows the considerations and circumstances under which the contract was entered into. There was no effort at the immediate time to obtain a different rate, nor was there any effort whatever to secure a different agreement as to values. Plaintiff knew the rate, because he had previously endeavored to obtain a lower rate, and presumably he was acquainted with the terms of shipment as to values, having been for six years a shipper by the river, and, being cognizant of these matters, directed his stock to be shipped without any endeavor or attempt to arrive at a different agree-

ment, except as to the rate; and we can see nothing in the immediate circumstances attending the shipment and execution of the bill of lading that savors of restraint or unfairness on the part of the defendant in requiring its execution on the part of Schrader. It is not disclosed whether or not plaintiff could have obtained other terms, based upon higher valuation of the stock, had he applied therefor, and represented that it was above the average value stated in the bill of lading, and we must presume that he could have obtained other conditions altogether reasonable; the defendant being a common carrier of live stock, as well as other property, and being in duty bound to accept and carry all stock offered on terms that are reasonable and just. From these considerations, it was error for the trial court to leave the question with the jury, as it did, whether there was any consideration in the way of a lower or less than the ordinary rate for a limitation of the defendant's liability for negligence as to such stock. The contract is one which the parties, so far as the record shows, could lawfully make, and there was no evidence tending to show that it was not freely and fairly executed by the parties involved. The plaintiff was, therefore, not entitled to recover upon his common-law action, having entered into a special contract relative to the utmost value of the animal injured, so that the judgment must be reversed, and the case remanded.      REVERSED.


Decided 28 April, 1902.