Argued February 20, affirmed March 13, opinion modified on rehearing April 17, 1917.

# ROSENWALD *v.* OREGON CITY TRANSP. CO.

(163 Pac. 831; 164 Pac. 189.)

**Shipping—Loss of Goods by Carrier—Trial—Election Between Defenses.**

1. In action against a carrier by water for loss of goods, refusal to require defendant's election between defenses that damage was caused by negligence of colliding dredge and by dangers of navigation, etc., is not erroneous, where motion was made after jury had been impaneled.

**Shipping—Liability of Carrier—Limitation—Dangers of Navigation and Unavoidable Accident.**

2. A carrier by water may, by contract, exempt itself from liability for loss occurring from "dangers of navigation" or "unavoidable accident."

**Shipping—Liability of Carrier—Limitation—Construction—"Act of God."**

3. Provisions in a carrier's contract, exempting it from loss to goods due to "dangers of navigation" and "unavoidable accident,"

are broader than term "act of God," and excuse it where a collision occurred without its fault.

### Shipping—Carriers—Loss of Goods—Jury Question.

4. Where a carrier's contract exempted it from loss due to "dangers of navigation" and "unavoidable accident," it is a jury question whether the loss so occurred without negligence on the carrier's part.

### Shipping—Carriers—Loss of Goods—Burden of Proof.

5. A defendant carrier by water whose contract exempted it from loss due to dangers of navigation or unavoidable accident has the burden of showing the loss so occurred without negligence on its part.

### Shipping—Carriers—Loss of Goods—Admissibility of Evidence.

6. Where defendant carrier claimed goods intrusted to it were lost by dangers of navigation or unavoidable accident, evidence regarding a recent change in the position of a dredge it collided with and an unexpected rise in the river, was admissible.

### Shipping—Carriers—Loss of Goods—Instructions.

7. In action against a carrier by water for loss of goods, requested instructions that defendant was not excused if loss was caused by certain water conditions were properly refused because not including defense based upon negligence of a colliding dredge.

### Shipping—Carriers—Loss of Goods—Instructions.

8. In action against a carrier by water for loss of goods, an instruction that defendant was not liable for loss caused by an unexpected rise in the river, etc., is erroneous, where there was no evidence to support such theory.

### Appeal and Error—Harmless Error—Instructions.

9. An erroneous instruction that defendant carrier by water was not liable for loss occasioned by sudden change in water conditions is harmless, where plaintiff's failure of proof prevented recovery in any event.

[As to liability of carrier for loss of goods occasioned partly by act of God, and partly by other means, see note in 97 Am. Dec. 409.]

### Shipping—Carriers—Loss of Goods—Failure of Proof.

10. Where plaintiff declares upon the common-law liability of defendant common carrier, but the shipment was made under a written contract containing material restrictions upon its liability, there is a failure of proof preventing recovery.

### Appeal and Error—Necessity of Decision.

11. It is unnecessary to consider plaintiff's assignment of error concerning a restriction on argument of counsel, where plaintiff's failure of proof prevented recovery in any event.

### ON PETITION FOR REHEARING.

### Appeal and Error—Determination—Remand for Amendment—Failure of Proof.

12. Sections 97–99, L. O. L., relating to curing variances by amendment, but providing that failure of proof is not a variance,

does not authorize remanding a case with permission to amend, where plaintiff entirely failed to prove his allegations.

**Appeal and Error—Modification of Judgment—Failure of Proof.**

13. Where plaintiff's failure of proof merited a nonsuit below, a judgment for defendant will be modified to one of nonsuit, although plaintiff resisted a nonsuit motion in the court below.

From Marion: PERCY R. KELLY, Judge.

This is an action by T. Rosenwald, doing business under the trade name and style of T. Rosenwald & Company, against the Oregon City Transportation Company, a corporation. Affirmed.

Department 1.   Statement by MR. JUSTICE BURNETT.

The substance of the complaint in this action is that on December 26, 1913, the plaintiff and his assignors delivered to the defendant as a common carrier by water for transportation to Portland, Oregon, sundry bales of hops of a certain value which the latter, in consideration of a reasonable compensation to be paid to it by the plaintiff, agreed to carry to its destination and there deliver to him on or before the next day but one following, but that during the voyage the steamer carrying the hops sank in the Willamette River whereby the property was injured to his damage in an alleged sum.   His cause of action and that of his assignors are separately stated but in substantially the same language except as to the averment of assignment.   It is convenient and sufficient therefore to consider but one of them as the defense to each is the same.

Answering, the defendant admits its ownership and operation of a river steamer called "The Oregona" and the identity of plaintiff and defendant, but denies all the other allegations of the complaint.   It avers that on December 26, 1913, it entered into a contract

in writing with the plaintiff whereby it undertook as a common carrier to transport from Mission Landing on the Willamette River to Portland, Oregon, subject to all the terms and conditions of the contract certain hops which shipment is the same transaction mentioned in plaintiff's complaint. A copy of the agreement is set out as an exhibit of which it is sufficient to state that it contains this language:

"Received in good order on board the steamer Oregona for —— the following packages to be delivered in good order, the dangers of navigation, fire, leakage, rats and other unavoidable causes excepted, and subject while in possession of said Oregon City Transportation Co. or its connecting lines, to all stipulations entered in bill of lading; and further subject to the conditions endorsed on back hereof, to all of which the shipper hereby assents.

"(Signed)   T. Rosenwald & Co., Shipper."

Then follows a description of the hops by lot numbers and weights and the receipt is signed by the defendant. The answer also contains the following averments:

"That defendant undertook to transport said shipment of hops to Portland, Oregon, and while said steamer Oregona was being properly and carefully operated in a careful and proper way and manner and without any negligence or carelessness whatsoever upon the part of the defendants said steamer at about six o'clock P. M. on said date, at Magoon Bar, at the foot of the Clackamas Rapids in the Willamette river the aft part of the port side of said steamer collided with and struck the corner of the United States dredge Champoeg, from the result of which said steamer foundered and sank.

"That the said Willamette river from Portland to Corvallis and particularly at the place of said accident is a navigable stream and as such is under the sole and exclusive control of the United States government;

that said government, prior to said accident, had by appropriations and setting aside moneys for the improvement of said river, maintained dredges, snag boats and done and performed other public work upon said river, one of which said dredges was the United States dredge Champoeg, which said dredge at the time of the accident mentioned herein was under the supervision and control of the United States, and was engaged in doing dredging on said Magoon Bar.

"That on the 24th and 25th day of December, 1913, at the time said steamer Oregona passed said dredge going up the river said dredge was being operated about 500 feet north of the place of said accident and subsequent to, and prior to said accident, said United States dredge was by the authority of the proper United States officers, moved from said point to the foot of the Clackamas Rapids, and without any notice whatsoever to said steamer Oregona, began dredging at said place, and owing to the swiftness of the current of the river at said place, stretched a wire cable from said dredge across the channel to the east side of the river and without notice or warning to said steamer Oregona and while said steamer was being operated as aforesaid; said steamer, after reaching said swift current and approaching said dredge without any warning whatsoever to the officers and agents of defendant and after approaching to and near said cable the officers and agents of defendant discovered the same and realized the imminent danger to the life of the passengers of said steamer, thereupon applied full steam and backed said steamer full speed astern, and applied every precaution known to straighten said boat in said swift current and avoid the accident, but owing to said dredging and the swiftness of said current said boat was thrown against the corner of said dredge, damaged and sunk.

"That if said hops or any part thereof were damaged as alleged in said complaint, said damage, so far as this defendant is concerned, was the proximate cause of the act and authority of the United States government and of the negligence of said govern-

ment's officers and agents as above set forth, and so far as defendant is concerned, an unavoidable accident.

"That one of the conditions of said contract was that said hops were received in good order on said steamer to be delivered in good order at Portland, Oregon, subject to the dangers of navigation and other unavoidable causes; that plaintiff and his agents drew said contract and subscribed the same, and knew prior to said shipment, of said clause; that the dangers of navigation mentioned therein was the danger of navigating said steamer upon and over the rapids, shallows and bars of said river, and principal one of which are and were Clackamas Rapids and Magoon Bar, at which place said accident happened; that said rapids and said bar are dangerous to navigate for the reason that the Clackamas and Willamette rivers unite, and bed of the river falls to such an extent that said current is transformed into a rapid and dangerous stream of water, which runs at a curve of 45° and that in navigating a boat down stream in said current, the swiftness of said water, the swirls and whirlpools thereof make it dangerous and difficult to navigate and control said boat; that the sinking of said boat was approximately caused by the natural action, flow and force of said water and was, thereby, an act of God, and an unavoidable cause so far as defendant was concerned, and happened and occurred without any negligence whatsoever upon the part of defendant, and if any damage was sustained to said hops, said damage and loss, if any, was by said contract excepted from defendant's liability thereunder."

All the new matter in the defendant's pleading except the artificial entity of the parties is traversed by the reply save as alleged in the complaint. The evidence for the defendant substantially supported the affirmative answer. The trial terminated in a verdict for the defendant. From the consequent judgment the plaintiff appeals.                    AFFIRMED.

For appellant there was a brief over the names of *Mr. Hall S. Lusk, Messrs Dolph, Mallory, Simon & Gearin* and *Messrs. Carson & Brown,* with an oral argument by *Mr. Lusk.*

For respondent there was a brief over the names of *Mr. Abraham Nelson* and *Messrs. Westbrook & Westbrook,* with an oral argument by *Mr. Nelson.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. As a preliminary it was contended that the answer contained two defenses and it is assigned as error that the court overruled the plaintiff's motion to require the defendant to elect between them, the first of which was to the effect that the damage was occasioned by the negligent conduct of the officers of the United States government in charge of the dredge and the other that the loss was due to the dangers of navigation and the act of God.   This motion was not made until the jury had been impaneled and the cause was ready for the testimony.   In *Fleishman* v. *Meyer,* 46 Or. 267 (80 Pac. 209), it was held that such an attack should have been made by motion during the formation of the pleadings and it came too late when the issue was ripe for hearing.   This case is to be distinguished from *Harvey* v. *Southern Pac. Co.,* 46 Or. 505 (80 Pac. 1061), where at the trial the plaintiff was compelled to elect between two inconsistent causes of action which he based upon the same grievance.   A defendant is entitled to urge as many defenses as he may have; while a plaintiff must make "a plain and concise statement of the facts constituting the cause of action without unnecessary repetition": Section 67, L. O. L. The code abolishes all the ancient forms whereby a plaintiff might state his plaint in several different

counts leading to the same result, while a defendant may multiply his defenses within prescribed limits. This serves to differentiate the Fleishman-Meyer Case and the Harvey Case. The assignment of error about refusing to compel the defendant to elect must therefore be laid out of consideration.

In *Wells* v. *Great Northern Ry. Co.*, 59 Or. 165 (114 Pac. 92, 116 Pac. 1070, 34 L. R. A. (N. S.) 818, 63 Am. & Eng. Ry. Cas. (N. S.) 775, 65 Am. & Eng. Ry. Cas. (N. S.) 694), 1 N. C. C. A. 659, 7 N. C. C. A. 979), a railway case, the court laid down the rule that the duty of a common carrier was in the nature of insurance and that he could not escape liability for nonperformance of his stipulation except by showing that his failure was occasioned by the act of God or a public enemy, an act of public authority, an act of the shipper, or the intrinsic nature of the property intrusted to it. For common carriers by water the congressional statute of February 13, 1893, c. 105 (27 Stats. 445; 3 U. S. Comp. Stats. 1913, § 8031), known as the Harter Act, has enlarged the exemption in these words:

"If the owner of any vessel transporting merchandise or property to or from any port in the United States of America shall exercise due diligence to make the said vessel in all respects seaworthy and properly manned, equipped, and supplied, neither the vessel, her owner or owners, agent, or charterers, shall become or be held responsible for damage or loss resulting from faults or errors in navigation or in the management of said vessel nor shall the vessel, her owner or owners, charterers, agent, or master be held liable for losses arising from dangers of the sea or other navigable waters, acts of God, or public enemies, or the inherent defect, quality, or vice of the thing carried, or from insufficiency of package, or seizure under legal process, or for loss resulting from any act or omission of the shipper or owner of the goods, his agent or represent-

ative, or from saving or attempting to save life or property at sea, or from any deviation in rendering such service.''

2. It is also well established that a carrier may properly limit its liability so as to exempt it from loss accruing from dangers of navigation or unavoidable accident. It is competent therefore for the carrier to restrict not only its responsibility but also its privileges. It may substitute any lawful contract for the rule imposed upon it by the common law or for the immunity conferred upon it by statute and it is said in *Patterson* v. *Wenatchee Canning Co.*, 59 Wash. 556 (110 Pac. 379), following *Butler* v. *Greene*, 49 Neb. 280 (68 N. W. 496):

''A special contract of bailment prevails against general principles of law applicable in the absence of an express agreement.''

This doctrine is likewise followed in the later case of *Alaska Coast Co.* v. *Alaska Barge Co.*, 79 Wash. 216 (140 Pac. 334, L. R. A. 1915C, 423). The decision of the instant case, therefore, must turn mainly upon the construction of the instrument pleaded by the defendant; for it is without dispute in the testimony that the stipulation of the parties was evidenced by the writing set out in the answer.

3. The effort of the plaintiff is to show that the circumstances do not disclose an act of God and that ''dangers of navigation'' and ''unavoidable accident'' practically are synonymous with the phrase ''act of God.'' An act of God may be—

''said to be that which is occasioned exclusively by the violence of nature; by that kind of force of the elements which human ability could not have foreseen or prevented, such as lightning, tornado, sudden squall of wind, and the like. Again, it is said to be at least

an act of nature which implies entire exclusion of all human agency, whether of the carrier himself or of third persons. It is called a disaster with which the agency of man has nothing to do. It is defined to be a natural necessity, which could not have been occasioned by the interference of man, but proceeds from physical causes alone": 1 Words & Phrases, p. 118, and authorities there cited.

But this term is more restricted in its signification than either "dangers of navigation" or "unavoidable accident," for it is plain that either of the latter may happen in cases where the actions of human beings operate as an essential part. A casualty occurring by an act of God is an "unavoidable accident" but it is not every unavoidable accident which is an act of God.

In *United States* v. *Kansas City So. R. Co.,* 189 Fed. 471, we find this:

"While some authorities hold that 'unavoidable accident' is synonymous with 'act of God,' the better definition, in the opinion of the court, is that it must be an inevitable accident which could not have been foreseen and prevented by the exercise of that degree of diligence which reasonable men would exercise under like conditions and without any fault attributable to the party sought to be held responsible."

In *Hodgson* v. *Dexter,* 1 Cranch C. C. 109, 12 Fed. Cas. 283, it is said:

"By common acceptation, unavoidable accident means, a casualty which happens when all the means which common prudence suggests have been used to prevent it."

In *Central Line of Boats* v. *Lowe,* 50 Ga. 509, speaking of unavoidable accident, the court said:

"As we understand the words they mean an irresistible cause standing exactly on the footing with an act of God except that it is the product of human agency."

*Hays* v. *Kennedy,* 3 Grant Cas. 351 (41 Pa. St. 378, 80 Am. Dec. 627), was a case of collision of two steamers on the Ohio River. After discussing the precedents the court concludes with this utterance:

"Whatever may be said, therefore, respecting the meaning of the phrase 'act of God,' we think it can have no application in a case where the parties have expressly provided a different rule of liability, by expressing themselves in terms that cannot reasonably be interpreted in the narrow sense often attributed to that phrase. When they provide that they shall not be liable for the unavoidable dangers of the navigation, they mean dangers that are unavoidable by them, supposing that they have exercised all the precaution, care, and skill that the law usually demands of common carriers. They mean that they shall not be answerable as insurers against accidents which the law respects as inevitable; but that if they prove such an accident falling upon them without any previous fault of theirs, and that they had a proper vessel and crew, and did all in their power to extricate themselves from the danger, they shall be as free from liability as they are from fault."

Treating of the exception "dangers of the river" in *Whitesides* v. *Thurlkill,* 12 Smedes & M. (20 Miss.) 599 (51 Am. Dec. 128), the court ruled that if in a collision with another steamer the damage arose without any fault of the defendant or of the hands upon his boat they were excusable; but if they had been guilty of negligence or might have prevented the loss by the exercise of reasonable skill and diligence the defendant would be liable. It was also held in *Van Horn* v. *Taylor,* 2 La. Ann. 587 (46 Am. Dec. 558 [same case reported as *Van Hern* v. *Taylor,* 7 Rob. (La.) 201, 41 Am. Dec. 279]), that a collision happening without the fault of defendant was an unavoidable accident, and in *The Favorite,* 2 Biss. 502, 8 Fed. Cas. 1103, it was de-

cided that where a vessel struck a hitherto unknown and invisible snag the casualty was due to a danger of the river.

4. From these and other precedents which might be cited we deduce the principle that under exceptions such as are noted in the contract pleaded by the defendant in this case the carrier will be excused from liability on showing that without fault on his part and while doing all he could do seasonably to prevent the accident a collision with another vessel ensued resulting in damage to his cargo. On the other hand, it is said in *Union Steamship Co.* v. *New York & Va. Steamship Co.,* 65 U. S. 307 (16 L. Ed. 699):

"It is not inevitable accident, as was well remarked by the learned judge in the case of the Juliet Erskine, 6 Notes of Cases 634, 'where a master proceeds carelessly on his voyage, and afterwards circumstances arise when it is too late for him to do what is fit and proper to be done.' He must show that he acted seasonably, and that he 'did everything which an experienced mariner could do, adopting ordinary caution,' and that the collision ensued in spite of such exertions."

5–7. Under such conditions it is a question for the jury to determine under all the circumstances disclosed by the evidence whether the defendant brings himself within the doctrine of the precedents cited. As to the care and vigilance of the defendant the situation is analogous to the teaching of *Palmer* v. *Portland Ry. L. & P. Co.,* 56 Or. 262 (108 Pac. 211, 59 Am. & Eng. Ry. Cas. (N. S.) 68), wherein it is held that the question of whether or not a person was negligent is one for the jury under proper instructions from the court. In carrier cases under a contract like the one here involved it is incumbent upon the defendant to show that it was exercising proper diligence under all the circum-

stances and was free from fault in order to avail itself
of the stipulated exceptions to the common-law liabil-
ity.   To enable them to judge of this matter the jurors
were entitled to know all the circumstances surround-
ing the transaction and this disposes of the questions
to which the plaintiff objected wherein it was sought
to show the amount of water going through the Clack-
amas Rapids and whether it would influence the con-
trol of the boat; if there was any notice of the
dredge being anchored at the point where the collision
occurred and if it had been at the place where she was
a day or two before, approximately 700 feet farther
downstream, the "Oregona" could have passed safely.

8. The plaintiff complains of the court's refusal to
charge the jury that the terms "danger of navigation"
and "unavoidable causes" signified accidents which
do not happen by the intervention of man.   But as we
have shown by the precedents this is not an accurate
definition of those terms.   The court also declined to
instruct the jury as follows:

"That under the pleadings in this case the only thing
upon which the defendant relies as coming within the
exception of the contracts as to dangers of navigation
and unavoidable causes, is that the accident was caused
by the rapids, shallows, bars, swiftness of the current
and whirlpools of the river.   If you find from the evi-
dence that the accident was due to these causes, or any
of them, your verdict must be for the plaintiff, because
such an accident does not come within the said excep-
tions of the dangers of navigation and other unavoid-
able causes."

This request to charge is faulty in that it does not
state all the pleading, but only part of it.   The in-
struction to be available must cover the whole theory
of the case.   The same objection is applicable to the
other request of the plaintiff to direct the jury—

"that an accident occurring as the result of the rapids and current and bar in the river which condition has existed for a long period of time is not such an accident as is caused by the act of God."

The instructions given by the court substantially embodied both the theory of the plaintiff and that of the defendant except in the part which follows:

"You are instructed that if you find at the time of the accident there had been an unexpected rise in the Willamette river above the Clackamas Rapids and that these two elements combined to cause an unprecedented swift, dangerous and unexpected action and flow of water at said Rapids and Magoon's Bar, and that this said condition could not have been foreseen, prevented nor guarded against by the defendant, or its agents, and was not produced nor contracted by human agency, then in that event it constituted an act of God, and if plaintiff's loss, if any, was occasioned thereby, without negligence on defendant's part, defendant would not be liable, and your verdict must be for the defendant."

This declaration is at least abstract and inapplicable to the issues of the case. It is true that the answer states "that the sinking of said boat was approximately caused by the natural action, flow and force of said water and was, thereby, an act of God." This, however, is only a conclusion of law and cannot be derived from the facts stated, for the operation of the water, although a natural cause, was neither irresistible, unlooked for nor unusual. Neither is there any testimony to show that there was a sudden storm or any unprecedented convulsion of nature which produced the accident. On the contrary the history of the case is to the effect that the ordinary state of the river and weather conditions for that season of the year were present and that the "Oregona" could have safely negotiated the stream had it not been for the

unexpected presence of the government dredge at anchor in the channel.   The giving of this abstract instruction would lead to a reversal of the case under the authority of *Tonseth* v. *Portland Ry. L. & P. Co.,* 70 Or. 341, 347 (141 Pac. 868), but for the following consideration.

10, 11. It will be remembered that the plaintiff declares upon the pure common-law accountability of the defendant as a common carrier while it appears without dispute in the evidence that the shipment was undertaken in pursuance of a written agreement containing material restrictions upon that liability.   It was held in *Normile* v. *Oregon Nav. Co.,* 41 Or. 177 (69 Pac. 928, 56 Cent. L. J. 123, 28 Am. & Eng. Ry. Cas. (N. S.) 306), that where the plaintiff declares on a breach of the common-law duty of a carrier and the proof shows that the venture was assumed under a contract for restricted liability it is a failure of proof preventing a recovery by the plaintiff in that action. After pointing out that although the agreement curtails the responsibility of the carrier in certain respects yet if there is enough in the case upon which to found a common-law demand independent of the shipping receipt the action of the plaintiff may proceed, Mr. Justice WOLVERTON held that on the contrary if on the coming in of the proof it appears that the facts upon which the plaintiff would recover are controlled by a written contract limiting their operation he must fail.   The opinion contains this statement:

"Ordinarily the common carrier is considered and treated as an insurer of the goods it undertakes to carry and all limitations of common law liability are in the nature of exceptions to its general undertaking and hence in order to avoid such liabilities the exceptions must be pleaded.   Thus it has been held in *Missouri So. Ry. Co.* v. *Nicholson,* 2 Willson, Civ. Cas. Ct. App.,

§ 168, that 'in an action against a common carrier, founded on the common law liability of such carrier, it is not necessary to produce in evidence a bill of lading of the property alleged to have been lost or injured. If there was a special contract, restricting the common law liability of the carrier, it devolved upon the carrier to allege and prove it.' * * And this is just what the defendant has done in the case at bar. It has set up that, by a special agreement, the plaintiff limited himself in his recovery to $100. The plaintiff replied that the alleged agreement was void, as being contrary to sound public policy. If void, the defendant's common law liability remains unchanged and unrestricted in that particular, and the special contract cannot stand in the way of plaintiff's recovery by the common law form of action. If, however, the special agreement is found legal and binding, there is a variance fatal to that form of action, and the plaintiff must be remitted to the special contract and an action thereon,'' citing authorities.

After disposing of other questions in the case the opinion concludes with the statement that:

"The plaintiff was therefore not entitled to recover upon his common-law action, having entered into a special contract relative to the utmost value of the animal injured, so that the judgment must be reversed, and the cause remanded."

Indeed, in this cause under the uncontroverted evidence concerning the writing relied upon in defense, a verdict should have been directed for the defendant as the plaintiff failed in his proof. The error of abstract instructions therefore becomes negligible for, taking the whole case together, the correct result was attained. In this view it is also unnecessary to consider the assignment of error about the restriction on the argument of counsel.

In any event, there was enough to go to the jury on the question of whether or not the defendant was with-

out fault and exercised the proper skill and prudence
in the situation so that the collision with the dredge
occurred without blame upon the defendant, bringing
it within the exception of ''dangers of navigation'' and
''unavoidable accident.''   These considerations lead to
an affirmance of the judgment.            Affirmed.

Mr. Chief Justice McBride, Mr. Justice Benson
and Mr. Justice Harris concur.

---

Modified April 17, 1917.

On Rehearing.

(164 Pac. 189.)

Former opinion modified on rehearing.

*Mr. Hall S. Lusk, Messrs. Carson & Brown* and
*Messrs. Dolph, Mallory, Simon & Gearin,* for appellant.

*Mr. Abraham Nelson* and *Messrs. Westbrook & West-
brook,* for respondents.

Department 1.   Mr. Justice Benson delivered the
opinion of the court.

In an able argument the plaintiff urges that the
opinion of the court in this case is erroneous because
while it holds that the trial court gave to the jury an
incorrect instruction, it further determines that this
error is negligible for the reason that there was a fatal
variance between plaintiff's pleadings and proof which
would prevent a recovery in any event.   It appears
from the record that the complaint bases the right of
recovery upon the common-law liability of the carrier

while upon the trial, plaintiff, in his direct case, offered proof of a written agreement expressly limiting such liability. The evidence of this written agreement is nowhere contradicted. It has been repeatedly held by us that where a plaintiff pleads a common-law liability and proves a written contract expressly limiting such liability, he cannot recover: *Normile* v. *Oregon Nav. Co.,* 41 Or. 177 (69 Pac. 928); *Union St. Ry. Co.* v. *First Nat. Bank,* 42 Or. 606 (72 Pac. 586, 73 Pac. 341); *McGregor* v. *Oregon R. & Nav. Co.,* 50 Or. 527 (93 Pac. 465, 14 L. R. A. (N. S.) 668); *Lacey* v. *Oregon R. & Nav. Co.,* 63 Or. 596 (128 Pac. 999). It follows that under the pleadings and proof the plaintiff was not entitled to recover in any event in this particular action. The defendant interposed a seasonable motion for a nonsuit which being resisted by plaintiff was denied.

12. It is now contended that this court should remand the cause to the lower court, with permission to plaintiff to amend his pleadings. This position is based upon the provisions of Section 97, L. O. L., in regard to variance between a pleading and the proof. This section of our Code must be read in connection with Sections 98 and 99, in regard to which it may be said that the phrase "fatal variance" is practically synonymous with the "failure of proof" described in Section 99, L. O. L., and such a variance is termed "fatal" for the reason that it cannot be cured by amendment. Mr. Pomeroy in his work on Code Remedies (4 ed.), at Section 447, classifies disagreements between pleadings and proofs as being of three grades: (1) An immaterial variance; (2) a material variance; and (3) a complete failure of proof. As to the latter he says:

"Finally, if the divergence is total, that is, if it extends to such an important fact, or group of facts, that

the cause of action or defense as proved would be another than that set up in the pleadings, there is plainly no room for amendment, and a dismissal of the complaint or rejection of the defense is the only equitable result'': Pomeroy's Code Remedies (4 ed.), § 448.

13. While it is true that a judgment of nonsuit was the best which plaintiff might have demanded in the trial court, and although he rejected that by resisting the motion therefor, it is equally true that we are unable to find authority for visiting such failure of proof with a more severe penalty than a judgment of nonsuit and consequently a judgment of that character will be entered here. AFFIRMED. MODIFIED ON REHEARING.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BURNETT and MR. JUSTICE HARRIS concur.