ROBERT W. RALSTON, APPELLEE, v. UNION PACIFIC RAILROAD COMPANY, APPELLANT.

FILED MAY 15, 1914.    No. 17,751.

1. Carriers: INJURIES TO CATTLE IN TRANSIT: EVIDENCE. In an action against a common carrier to recover damages to a shipment of live stock over the defendant's line of railroad, it having been shown by plaintiff that the injuries to the animals could not have been occasioned by reason of their own inherent vice, but must have been sustained by delay and want of proper care in transportation, it is not error to refuse to direct a verdict for the defendant.

2. ————: ————: LIABILITY. Where a shipper of live stock does not agree to furnish a caretaker, and some of the animals die or are injured for want of proper care and protection while in transit, the carrier is liable and must bear the loss.

3. ————: ————: DEFENSES: BURDEN OF PROOF. Where the carrier defends on the ground that the stock when received for transportation was weak and thin in flesh and unfit for shipment, and that the injuries sustained in transit were caused by reason of that fact, it is not error to instruct the jury that the burden is on the defendant to show that fact by a preponderance of the evidence.

4. ————: ————: REVIEW: ADMISSION OF EVIDENCE. Where the plaintiff has been permitted to prove the unsuitable condition of the car in which the stock was shipped without objection, the introduction

Ralston v. Union P. R. Co.

of such proof furnishes no grounds for a reversal of the judgment, although some of the evidence related to a matter not specifically set forth in the pleadings.

5. ———: ———: DAMAGES: EVIDENCE. Evidence examined, and found that the verdict was not excessive, and was sustained by the evidence.

APPEAL from the district court for Dawson county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*Edson Rich, John A. Sheean* and *A. G. Ellick,* for appellant.

*H. M. Sinclair, J. H. Linderman* and *W. A. Stewart,* contra.

BARNES, J.

The plaintiff commenced this action in the district court for Dawson county to recover damages alleged to have been caused by the negligence of the defendant railroad company in the transportation of two car-loads of cattle over its line of railroad from Denver, Colorado, to points in Nebraska. One car-load was billed to Lexington and the other to Willow Island in Dawson county in this state. The shipment to Lexington was consigned by the Laverty Brothers to the plaintiff, and the shipment to Willow Island was consigned by Laverty Brothers to Frank Ralston, a brother of the plaintiff.

The grounds of negligence charged as to the Lexington shipment were that the stock was kept in the process of transportation for 61 hours, while the reasonable running time between the place where the shipment originated and the place of its destination was only 25 hours; that defendant negligently permitted the existence of a hole between the jamb of a door and the door itself, and because of the rough handling of the car some of the cattle became fastened therein and were thereby injured. The charge of negligence as to the Willow Island shipment was that the time actually consumed in the transportation of the car was 51 hours, while the reasonable

time required for such transportation was only 24 hours, and that the cattle were roughly handled in transit.

The defendant answered as to both shipments, alleging that they were moved under written contracts from the point of origin to the point of destination within a reasonable time; that the injury to the stock, if any, was due to the inherent vice of the cattle and their condition, and to the lack of vitality when received by the defendant at the point of loading; that plaintiff failed to send a caretaker for either shipment of the stock in order to look after it and care for it during its transportation.

On a trial to a jury, a verdict was rendered for the plaintiff, fixing his damages for the Lexington shipment at the sum of $500, and for the Willow Island shipment there was a recovery for $183, with interest on the said amounts. Defendant's motion for a new trial was overruled, and a judgment was rendered on the verdict in favor of the plaintiff and against the defendant for the sum of $733.04. To reverse that judgment the defendant has brought the case to this court by an appeal.

1. In defendant's first assignment of error, it is alleged that the court erred in refusing to direct the jury to return a verdict for the defendant on both of the plaintiff's causes of action; that the court erred in refusing to strike out the testimony relating to the reasonable running time between the point of origin and the destination of the plaintiff's stock shipments, and there was error in refusing to give instructions numbered 4 and 12 requested by the defendant.

On the question of directing a verdict, it may be fairly said that there was a conflict of evidence as to the condition of the stock at the time it was received by the defendant for shipment and when it reached its place of destination. It appears by the plaintiff's evidence that, when the stock was received, it was in a fairly good condition for shipment. The testimony discloses without question that when it reached its destination it was in such a condition as to be unsalable, and the plaintiff refused to receive it from the hands of the carrier. It seems clear that the

stock had been seriously injured in transit, and therefore the court correctly refused to direct a verdict for the defendant.

As to the question of striking out the testimony tending to show the reasonable running time from Denver to the place of destination in Nebraska, the distance of about 300 miles, it cannot be said that the reasonable running time was more than 24 hours, for at a rate of speed not exceeding 15·miles an hour the stock could have easily been delivered at the place of destination within that time. It follows that the court did not err in refusing to give instructions numbered 4 and 12, as requested by the defendant.

2. Appellant alleges that the verdict is contrary to instructions 12 and 13 given by the court on its own motion. Those instructions related to the defense of the inherent vice of. the animals embraced in the two shipments. In regard to this contention, it may be said that it was the duty of the carrier, when a shipper provided no caretaker, to look after the cattle and use all reasonable efforts to properly care for them, and a failure to exercise such care while the animals were being transported afforded the plaintiff a just cause of action.

It appears from the evidence that at least six of the animals were killed outright or died en route, and many of the others were injured. One had its leg broken by being caught in the car door; others were bruised, and skinned in spots; and still others were injured by running against a bolt which projected inside of one of the cars. In fact, there was evidence which tended to show that the cattle could not have received such serious injuries by reason of their own inherent vice, and therefore it cannot be said that the verdict was contrary to those instructions.

3. Appellant assigns error for the giving of instructions numbered 10 and 11 given on the court's own motion. By instruction No. 10 the jury were told, in substance, that if the plaintiff's cattle were in poor condition when they were accepted by the defendant company for shipment, and

some of them died and others were injured because of their inherent weakness without any fault or negligence on the part of the defendant, the plaintiff could not recover, but the burden of proof was on the defendant to show those facts by a preponderance of the evidence. This instruction was quite as favorable to the defendant as the evidence warranted.

By instruction No. 11 the court told the jury, in substance, that if they believed from the evidence that when defendant accepted the cattle in question for shipment, knowing they were poor and thin in flesh, and by reason thereof were not in a fit and suitable condition to endure shipment, or if they believed that their condition as above stated was apparent to the observer, and the defendant accepted the cattle in such condition, then under such facts, if they were found to exist, defendant would be liable for such damages as plaintiff suffered by reason of any negligence and carelessness of the defendant in transporting the cattle from Denver to their respective points of destination. As we view this instruction, it was correct and accords with the great weight of authority.

4. The defendant complains because the court refused to strike out of the record the evidence of the existence of a bolt on the inside of one of the cars in which the stock was transported, and on which it is apparent some of the cattle were injured, as not within the issues. As we read the record, this evidence was received without objection. It was apparent that the existence of the bolt was the cause of serious injury to some of the cattle. We fail to find any motion to strike this evidence from the record, and therefore this assignment cannot be considered as a ground for a reversal of the judgment.

5. Defendant complains because the court permitted the plaintiff to answer the questions as to the value of the cattle at Lexington on February 26, and what would have been their value had they arrived in the condition in which they were loaded at Denver. As we view this evidence, it was competent and furnished a means of ascertaining the amount of plaintiff's damages.

6. It is contended that the court erred in excluding the testimony of the witness Palmer that he had requested Laverty Brothers to furnish a caretaker when the shipment arrived at Sterling, Colorado. We think this contention is without merit. In fact, this question, with many other of defendant's objections, appear to have been settled in *Chicago, B. & Q. R. Co. v. Williams,* 61 Neb. 608, where it was said:

"A railroad company acts in the capacity of a common carrier of live stock which it receives for transportation; and as such carrier it is bound to provide cars fit and suitable under existing conditions, and exercise due care to carry safely.

"Where a shipper of live stock does not agree to furnish a caretaker, and some of the animals die or are injured for want of proper care and protection while in transit, the carrier is liable and must bear the loss.

"Where a shipper of live stock agrees to furnish a caretaker and fails to do so, the carrier, if it has knowledge of such failure and proceeds under the shipping contract, is liable for any loss resulting from its failure to provide the stock with proper care and protection."

Finally, it is claimed that the damages were excessive, and were given under the influence of passion and prejudice. The argument on this assignment is without merit.

As we view the record, the defendant had a fair trial; and, no prejudicial error appearing, the judgment of the district court is

AFFIRMED.

ROSE, FAWCETT and HAMER, JJ., not sitting.