[Argued June 16, 1893; decided July 16, 1893.]

## BRUCE *v.* PHŒNIX INSURANCE CO.

[S. C. 34 Pac. Rep. 16.]

1. PLEADING ESTOPPEL.*—It is now the settled rule in Oregon that an estoppel *in pais* must be pleaded to be available as a defense.

2. REFEREE'S REPORT—APPEAL.—The findings of a referee will rarely be disturbed on appeal when there are circumstances tending to weaken the testimony of the defeated party, or to sustain the findings as made. *Lovejoy* v. *Chapman*, 23 Or. 571, cited and followed.

3. INSURANCE POLICY—BREACH OF CONDITION.—A provision of a policy of insurance that the building shall be occupied as a residence, and that if it becomes vacant for ten days the policy shall be void, is binding upon the insured, and allowing the building to be vacant for more than the specified time will prevent recovery.

4. INSURANCE—WAVING PROOFS OF LOSS.—A policy holder who fails to make proof of loss within the time specified therefor in the policy of insurance, cannot recover upon the policy unless such proofs have been waived by the company.

This is a suit brought by W. S. Bruce against the German Savings and Loan Society and the Phœnix Insurance Company to recover from the latter one thousand eight hundred dollars, the amount claimed to be due on an insurance policy, on account of a loss by fire. The facts show that on the thirty-first of May, 1890, plaintiff was the owner of certain real property in Portland Homestead, Multnomah County, upon which was a two-story frame building of the value of about two thousand six hundred dollars, and on that day he executed and delivered to the German Savings and Loan Society a mortgage upon said real property to secure the sum of one thousand dollars, payable in three years from that date, in which mortgage he covenanted to keep said building insured for one thousand eight hundred dollars against loss

---

*NOTE.—This question is reviewed at length in a note to the case of *Tyler* v. *Hall*, 27 Am. St. Rep. 344, where it is concluded that the rule is now firmly established, particularly in the code states, that estoppels must be specially pleaded where an opportunity has been afforded for so doing.— REPORTER.

by fire in some reputable insurance company, the loss, if any, to be made payable to said mortgagee; that on the second of June, 1890, he made application to one J. A. Arment, a local agent of the Phœnix Insurance Company, for an insurance upon said building in the sum of one thousand eight hundred dollars, for the term of three years, while occupied as a family dwelling, and paid twenty-seven dollars as a premium thereon, and thereupon the company executed and delivered to him policy number 3538, as applied for by him, which he delivered to said German Savings and Loan Society as collateral security for its loan, and to be held by it as trustee for the plaintiff, after the payment of the said mortgage debt; that on the fourth of July, 1891, said building was totally destroyed by fire, and the plaintiff, on or about the seventh of that month, notified the agent of the insurance company thereof, but the company failing to pay said loss, the plaintiff requested the German Savings and Loan Society to bring an action against the said insurance company upon said policy, which it refused to do, thus compelling him to bring a suit in equity to protect his rights.

The conditions of the policy issued to plaintiff, and relied upon by the insurance company to defeat the recovery, are as follows:  "This entire policy, unless otherwise provided by agreement endorsed thereon or added hereto, shall be void if  *  *  *  a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied, and so remain for ten days." The policy also provides, among other things, that "if fire occur the insured shall give immediate notice of any loss thereby in writing to the general agent at San Francisco,  *  *  *  and within sixty days after the fire, unless such time shall be extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire; the interest

of the insured, and all others in the property; the cash
value of each item thereof, and the amount of loss thereon;
all incumbrances thereon;  *  *  *  any changes in the
title, use, occupation, location, possession, or exposure of
said property since the issuing of this policy; by whom
and for what purpose the building herein described, and
the several parts thereof, were occupied at the time of the
fire," etc.   The policy further provided that "No suit or
action on this policy, for the recovery of any claim, shall
be sustainable in any court of law or equity until after full
compliance by the insured with all the foregoing require-
ments, nor unless commenced within twelve months next
after the fire."   Reference is also made in the policy to
the application and survey of the insured.

The plaintiff alleged that he had duly performed all
the conditions of said policy on his part to be performed.
The insurance company, after denying the material alle-
gations of the complaint, set up three separate defenses:
*First*, that plaintiff caused to be constructed a frame
building with shingle roof at a distance of thirty-five feet
from the insured building, when at the time the policy
was written the space was one hundred feet to the nearest
building, thereby increasing the hazard without notifying
the company; *second*, the building insured became va-
cant and unoccupied, and so remained for more than ten
days; and, *third*, the insured furnished no proof of loss
as required by the policy, and that such proof was not
waived by the insurance company.

After the issues were completed  the cause was referred
to Mark O'Neil, Esq., to take the testimony and report his
findings of fact and conclusions of law thereon; and, after
some testimony had been taken, the plaintiff, by leave of
the court, filed an amended complaint in which he alleged
that he offered to furnish the insurance company with
due proof of loss, but that it, by its duly authorized agent,
waived the condition of said policy by which it was

required to furnish proof of loss to said defendant, and
relieved and discharged the plaintiff from the performance
thereof by stating to him that the said insurance company
would not pay said loss.  After the testimony had been
taken, the referee reported as his findings of fact, that said
building was and had been unoccupied for more than ten
days prior to the fire, without the knowledge or consent of
the insurance company or its agents; and that the insured
failed and neglected to make proof of loss within sixty
days after said building was destroyed by fire, and that
said insurance company had not extended the time in
writing to said insured to make such proof of loss—but he
made no findings upon the question of the hazard caused
by the construction of said frame building at a distance
of thirty-five feet from the building covered by the policy
in question; and, as a conclusion of law, found that the
insurance company should recover from the plaintiff its
costs and disbursements.  The court approved the report
of the referee, and a decree was rendered dismissing the
suit, from which the plaintiff appeals.

*Geo. A. Brodie* ( *John M. Gearin, Julius Silvestone,* and
*Daniel R. Murphy* on the brief), for Appellant.

*Rufus Mallory* ( *Cyrus A. Dolph, Chas. B. Bellinger,* and
*Joseph Simon* on the brief), for Respondent.

MR. JUSTICE MOORE delivered the opinion of the court:

The appeal presents the following questions:  Was the
hazard increased by the construction of another building
after the policy was issued?  Was the house unoccupied
at the time of the fire, and had it been so unoccupied for
more than ten days prior thereto?  Was the proof of loss
waived by the insurance company?  We do not deem it
necessary to examine the first question, as we think the
solution of the other two decisive of the case.

1. The plaintiff alleges that he duly kept and performed all the conditions of the policy to be performed by him. The answer denies this, and for a separate defense alleges that at the time of the fire the house was unoccupied, and that it had been so unoccupied for more than ten days prior thereto, without the knowledge or consent of the insurance company. The reply denies this separate defense, and the issue is thus clearly made by the pleadings upon this question. The proof conclusively shows that at the time of the fire the house was unoccupied, and that it had not been occupied for about six weeks prior thereto, and that the company had no knowledge thereof. The plaintiff contends, however, that at the time he applied for insurance, J. A. Arment, the agent of the insurance company, visited the house in question and knew that the building was unoccupied, and that, having accepted the risk with knowledge thereof, the company is estopped from disclaiming a waiver of the policy on that account; that such knowledge on the part of the agent is notice to the company, and that the act of issuing the policy constitutes an estoppel *in pais* which can be established by evidence without any allegation in the pleading to support it. It is well settled at common law that an estoppel *in pais* need not be pleaded (Bigelow, Estoppel, 699), but the contrary has been held in this state. In *Rugh* v. *Ottenheimer*, 6 Or. 231 (25 Am. Rep. 513), it was held in a case in which the legal title to real property of the wife was held by her husband, that she was not estopped to claim the title against the husband's creditors, who had furnished goods upon the faith of his ownership of the land, the defendant having failed to allege the facts constituting the estoppel. BOISE, J., said: " If she had been guilty of fraud which would estop her, then the same should be pleaded to make it allowable, which is not done, and the matter of estoppel cannot be considered in this case." So in *Remillard* v. *Prescott*, 8 Or. 37, it was held that where the defend-

ant had, without objection, permitted the plaintiff to make improvements and pay the taxes upon defendant's land the latter was not estopped from claiming the legal title, and that it could not be controverted without alleging the estoppel. The same learned justice said: "The appellants claim title by estoppel, and if they intended to rely on such title, they should have pleaded it in the complaint, as they had and opportunity to do. They made their case on the complaint, wherein they relied on the fact that Craig had purchased the property from Chapman, and that by mistake, or the procurement of Prescott, the deed was made to Prescott and Craig. We think, therefore, that the matter of estoppel, as sustaining the claim of the appellant as prayed for, cannot be considered in this case." These cases have settled the rule in this state that an estoppel *in pais* must be pleaded, and we see no reason for changing it. The plaintiff relied upon the issue he made in his complaint, and not upon the estoppel, and, having elected his cause of suit, he should be bound thereby.

2. The original complaint, in substance, alleges that on the seventh of July, 1891, plaintiff notified the company of his loss, and thereafter furnished said insurance company with due proof thereof, while the amended complaint admits that no proofs were ever made. The evidence fails to show that plaintiff offered, or that the company rejected, any proof of loss as alleged in the amended complaint, or that the company by its agent ever told the plaintiff the loss would not be paid, thereby relieving him from the necessity of making the required proof. The plaintiff testified that about five days after the fire he called upon J. D. Coleman, the agent and adjuster of the insurance company, who told him the loss would be paid; that about five or six days after the first visit, he again called upon Mr. Coleman who then told him the company would not pay. He also testified that

he saw A. F. Gartner, the general agent of the company, who told him at first that they would see about the loss, and at another time that the company would not pay it. Mr. Coleman testified that the first time he saw the plaintiff after the fire was between the fifteenth and twentieth of July, and that he never at that or any time told him the loss would not be paid. Mr. Gartner testified that plaintiff called upon him and wanted to know when the company was going to pay him, and that he told him the loss was payable to the German Savings and Loan Society, and that if any money was paid on the policy it must be paid to that society. Upon this contradictory evidence the referee found that the company had not waived the condition of the policy which required proof of loss within sixty days from the time of the fire by informing the plaintiff that the loss would not be paid.

It is impossible for the appellate court, in the examination of a record, to determine the preponderance of evidence with that degree of certainty attainable by a court or referee who saw the witnesses, heard them testify and noted their manner and appearance while on the witness stand; and the findings made under such circumstances will rarely be disturbed when there are other facts and circumstances which tend to weaken the testimony of the defeated party, or to corroborate the conclusions reached: *Lovejoy* v. *Chapman*, 23 Or. 571 (32 Pac. 687). There are several facts and circumstances which tend to impair the testimony of the plaintiff. In order to secure the insurance upon the new building, which it is claimed increased the hazard to the building in question, and which was burned at the same time, he averred in the affidavit made in proof of his loss that at the time of the fire he was occupying the new house, and, upon this proof, secured his insurance. Soon after, he made another affidavit in which he swore that prior to, and at the time of, the fire the house covered by the policy in question was and had

been occupied for about six weeks, while at the trial of this cause he testified that he occupied the house in question and had slept therein nearly every night for six weeks prior to the fire. In this he is contradicted by his neighbors who testified that he neither occupied the house nor slept therein, but that he occupied and slept in the new house upon which he received his insurance from another company. Considering these facts and circumstances, we think the referee and court were fully warranted in the conclusions reached, and that the preponderance of the evidence upon this question is with the defendant company, and that the agents of the company never told the plaintiff that his claim would not be paid as alleged in the complaint.

3. The policy of insurance is the contract between the insurer and the insured upon which the latter must rely for the recovery of his loss. In the case at bar, the application is for an insurance of the building while occupied as a family dwelling, and this application is referred to in the policy as the foundation upon which it must rest, and it thereby becomes a warranty of the insured that the building will be occupied in that manner: 1 Wood, Insurance, § 156. The policy provides that if the building shall be or become vacant for ten days without the consent of the company, the policy shall become void. In *Commercial Insurance Co.* v. *Mehlman,* 48 Ill. 313, the policy provided, that it should be vitiated by keeping * * * saltpetre, * * * and upon proof that the insured kept a keg of saltpetre for sale it was held that, "whether saltpetre will explode or not, may be a vexed question, and whether dangerous or not is immaterial; the agreement was that the assured should not keep it, and if he did the policy should be vitiated, and he must be held to the agreement." The agreement entered into was that the building should be occupied, and that if it became vacant for ten days the policy should be void, and the insured

must be held to this agreement, which was a part of his warranty.

4. Proof of loss as provided in the terms of the policy is a condition precedent to recovery (2 Wood, Insurance, § 436), and since the plaintiff did not make it within the time prescribed, he waived his claim thereto, and for these reasons the decree is AFFIRMED.

---

[Argued June 9, 1893; decided July 17, 1893; rehearing denied August 2, 1893.]