Decided 25 May, 1903.

## UNION ST RY. CO. v. FIRST NAT. BANK.

[72 Pac. 586.]

PLEADING—EXAMPLE OF DEPARTURE.

1. The complaint in an action to cancel certain bonds alleged that they were the property of plaintiff corporation's predecessor, and had been placed in the hands of defendant bank for the purpose of sale, and that, as no sale had ever been made, they belonged to the plaintiff. The answer claimed a lien on the bonds through a deposit of them by their owner as security for a loan that was still unpaid. The reply alleged that the bonds were issued to the president of plaintiff's predecessor personally, and through him came into the possession of the bank for value, but that at the time that plaintiff was organized the bank had guarantied that, if plaintiff would purchase the property of its predecessor for a certain sum, the bank would deliver up the bonds

which it held for cancellation, and that, relying on this agreement, plaintiff had purchased the property, afterward paying the price to the bank. *Held*, that the reply was a departure from the cause of action set up in the complaint.

PLEADING—TRIAL—ALLEGATIONS AND PROOFS.

2. Where a different cause of action from that alleged in the complaint is set up by the reply, plaintiff cannot recover upon the latter, for the rule is settled in Oregon that proofs must follow and support the complaint or the plaintiff cannot prevail.

FINDINGS AND PLEADINGS.

3. Findings of fact must cover the material issues made by the pleadings, but not matters outside those issues, and a decree based on immaterial findings cannot stand.

From Union: ROBERT EAKIN, Judge.

This is a suit by the Union Street Railway Co. against the First National Bank of Union and others to compel the defendant bank to surrender up for cancellation four certain bonds of the defendant, the Union Railway, now in its possession, of the par value of $1,000 each, and numbered from 1 to 4, respectively. The complaint, after alleging the incorporation of the bank, and that W. T. Wright was at all times therein mentioned, and still is, the vice-president thereof, avers, in substance, that on or about the 23d of January, 1893, the Union Railway, for the purpose of borrowing money, issued a series of bonds, numbered from 1 to 20, inclusive, each of the par value of $1,000, and made payable to J. W. Shelton or bearer; that Shelton was at the time the president and general manager of the company, and the bonds were issued to him in trust therefor, and in order that they might be transferred and negotiated by him to intending purchasers, for the sole use and benefit of the company; that, to secure the payment thereof, the company executed and delivered to Shelton a mortgage upon all its property, consisting of a railroad and telegraph line between the City of Union and Union Station, together with the rolling stock, right of way, station grounds, buildings, and all other appurtenances belonging thereto; that thereafter all the bonds were placed with the defendant bank for safekeeping until they could be sold, but none of them have ever been disposed of, sold, or assigned by the railway or Shelton; that on or about the 8th of December, 1894, being unable to sell

or dispose of any of its bonds, the railway conveyed all of its property to one Henry Hewitt, who, on the 11th of the same month, sold and conveyed it to the incorporators of the plaintiff; that subsequently the bank wrongfully and unlawfully placed four of the bonds, numbered from 1 to 4 consecutively, in the hands of the sheriff of Union County, with instructions to sell the same at public auction.

The answer alleges, in effect, that all of the bonds were issued and delivered to Shelton as and for his own property, and that on or about the 1st of February, 1893, he sold and transferred the four bonds now in controversy to one W. L. Shelton, who on the 19th of October, 1894, sold them to F. A. E. Starr, who in turn assigned and transferred them to W. T. Wright and F. L. Richmond; that thereafter Wright and Richmond borrowed of the defendant bank $1,500, transferring the bonds to it as collateral security for the payment therefor; that no part of the money so borrowed has been paid, and that the bank now holds the bonds as security for such loan, and was proceeding to foreclose its lien thereon at the commencement of this suit; that on the 25th of April, 1893, the remaining sixteen bonds were deposited by Shelton with the bank as collateral security for an indebtedness from him to Fred Nodine, John M. Phy, and T. B. H. Green; and that such indebtedness has been paid and satisfied; and the bank now brings the sixteen bonds into court, and deposits the same with the clerk, for the benefit of whomsoever it may concern.

The reply alleges that the sixteen bonds were deposited with the bank to secure an indebtedness to Nodine, and that Nodine on the 25th of November, 1893, commenced a suit in the circuit court of Union County to foreclose his lien and equitable mortgage thereon, and that in such suit it was decreed that the railway property and the bonds be sold, and the proceeds applied to the payment of the sum of $6,200, the amount due Nodine; that afterward, and during the pendency of the proceedings, Nodine made an assignment of all his property to F. L. Richmond and W. T. Wright, as trustees, for the benefit of his creditors, and that Wright and Richmond, as such trus-

tees, received control of the bonds, and they were left with the
defendant bank for safe-keeping; that on the 11th day of De-
cember, 1894, and at the time the plaintiff's incorporators
purchased the property, the bank, through its president, W. T.
Wright, informed them that it had in its possession all of the
bonds, and guarantied that, if they would make such purchase
for the sum of $10,500, the bank would deliver up and cancel
the bonds, and the title to the property would thereupon be
free and clear from all incumbrances; that they relied upon
such representations and guaranty, purchased the property,
and made and delivered to the bank their promissory notes for
$10,500 in full payment thereof; that such notes were after-
ward paid; and that, if the bank ever had any claim or lien
upon the four bonds in controversy, or any of them, the same
has been paid in full out of the money so paid by the plain-
tiff's incorporators. A motion was made to strike out the new
matter alleged in the reply, on the ground that it was a de-
parture from the cause of suit set up in the complaint. This
motion was overruled, and from the evidence submitted the
court found that the railway now owned by the plaintiff was
originally owned by J. W. Shelton; that on the 23d of Janu-
ary, 1893, Shelton sold and conveyed it to the Union Railway,
a corporation organized for the purpose of owning and ope-
rating the road; that in consideration of such sale the railway
issued and delivered to Shelton its bonds, of the face value of
$20,000, and secured the payment thereof by a mortgage upon
the property; that thereafter Shelton sold the four bonds now
in controversy to W. L. Shelton, who transferred them to
Starr, who in turn sold and delivered them to Richmond and
Wright; that Richmond and Wright borrowed of the defend-
ant bank $1,500, and deposited the bonds with it as collateral
security for such sum, and thus the bonds came into the pos-
session of the bank in due course of business; that, at the time
of the sale of the railroad property to plaintiff's promoters,
Wright was present, and participated in the negotiations as a
trustee of Nodine, as a representative of the railway, and also
as a representative of the bank, and knew that the plaintiff

42 Or.—39

was making the purchase and paying the $10,500 therefor with the understanding that all claims against the road and bonds would be canceled, and, with the knowledge of that fact, Wright, as president of the bank, and acting for it, acquiesced in and sanctioned such sale; that by reason of such fact the bank is estopped to assert or enforce its lien upon the bonds in question as against the plaintiff, or to its prejudice; and that the sale thereof should be perpetually enjoined. From the decree entered in accordance with the findings of fact and conclusions of law, the defendants appeal.      REVERSED.

For appellant there was a brief and an oral argument by *Mr. C. E. Cochran.*

For respondent there was a brief and an oral argument by *Mr. Leroy Lomax.*

MR. JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

1. The complaint is based upon the theory that the bonds in controversy were and are the property of the Union Railway, the predecessor in interest of the plaintiff, and were only deposited with the defendant bank for safe-keeping until they could be sold and disposed of for and on account of the company; that no sale thereof has ever been made, and therefore, in equity, they belong to the plaintiff, as the purchaser of the property covered by the mortgage given to secure the payment thereof. The reply alleges and sets up that at the time the plaintiff's promoters or incorporators purchased the railway property, the defendant bank, through its president, W. T. Wright, represented that the bank had in its possession all the outstanding bonds issued by the railway, and "guarantied" that, if they would purchase the property for $10,500, the bank would deliver up the bonds for cancellation; that, relying upon such representations and promise, the purchase was made, and the money afterward paid to the bank; and that, if it had any claim or lien upon the four bonds, the same has thereby been fully satisfied and discharged. The decree of the court is based on the theory, however, that, although the

bonds came into the possession of the defendant bank in due course of business, it is estopped by the conduct and representations of its president to enforce its lien thereon to the prejudice of the plaintiff. The reply is a clear departure from the cause of suit set up in the complaint. By the complaint, the plaintiff bases its right to a decree upon the fact that all of the twenty bonds issued by the Union Railway were held by Shelton in trust, and deposited by him with the defendant bank for safe-keeping until they could be sold; that none of the bonds had been sold at the time plaintiff's incorporators purchased the property, and therefore their purchase included the equitable title to the bonds; and that it is entitled to the return thereof for cancellation. The reply, however, places the plaintiff's right to recover upon the contract of guaranty alleged to have been entered into by the bank, through its president, at the time the plaintiff's incorporators made the purchase; and this is an entirely different cause of suit from that set up in the complaint.

2. It has often been held by this court that the plaintiff must prevail, if at all, upon the matters alleged in his complant (*Lillienthal & Co.* v. *Hotaling Co.* 15 Or. 371, 15 Pac. 630; *Hammer* v. *Downing*, 39 Or. 504, 64 Pac. 651, 65 Pac. 17, 990, 67 Pac. 30; *Normile* v. *Oregon Nav. Co.* 41 Or. 177, 69 Pac. 928), and that he cannot set up one cause of action or suit in the complaint, and recover upon another and different ground of relief alleged in a reply.

3. In addition to this, the decree of the court is put upon a matter outside of any of the issues made by the pleadings. It is based upon the ground that the defendant bank is estopped to assert its claim or lien upon the four bonds in controversy as against the plaintiff. But there is no allegation in the pleadings upon which such a decree can be founded. Estoppel, to be relied upon, must be specially pleaded, where an opportunity has been offered therefor: *Remillard* v. *Prescott*, 8 Or. 37; *Bruce* v. *Phoenix Ins. Co.* 24 Or. 486 (34 Pac. 16); *Bays* v. *Trulson*, 25 Or. 109 (35 Pac. 26). If the bank is estopped by the conduct or representations of its president

from asserting a lien, as against the plaintiff, upon the bonds in suit, for the debt due it from Wright and Richmond, the facts constituting such estoppel should have been set forth in the complaint, where the plaintiff had an opportunity to plead them. The plaintiff, however, made its case solely upon the issue that the bonds had never been sold or delivered, but were the property of its predecessor, the Union Railway. Upon this theory, it should have recovered, if at all. The findings of the court outside of the pleadings will not sustain the decree: *Male* v. *Schaut,* 41 Or. 425 (69 Pac. 137); *Southwick* v. *First Nat. Bank,* 84 N. Y. 420.

It follows from these views that the decree of the court below must be reversed, but the cause will be remanded for such further proceedings as may be proper, not inconsistent with this opinion.                                    REVERSED.

Decided 3 August, 1903.

ON MOTION FOR FINAL DECREE.

MR. JUSTICE BEAN delivered the opinion.

The motion for a final decree will be allowed, and the decree heretofore entered modified accordingly. This is a suit in equity, tried here *de novo* upon the pleadings and testimony, and there is no reason appearing why it should not take the usual course. No decree, however, will be entered foreclosing the defendant's alleged lien upon the bonds in controversy, as the parties necessary to a full determination of that question are not in court.                                    MOTION ALLOWED.